Daniel Watts, SBN 277861
Edward Misleh, SBN 273645
**Law Office of Edward Misleh**
615 Tenth St.
Sacramento, CA 95815
(916) 443-1267
Fax: (916) 266-9403
Daniel@edwardmisleh.com
danielwatts@gmail.com

Attorneys for Plaintiffs

U.S. DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jared Powers, an individual; Winona Valdez, an individual; | No. |
| Plaintiffs, | Complaint for Damages, Injunctive and Declaratory Relief. |
| v. | |
| Does 1-50; | |
| Defendants. | |

## INTRODUCTION

1. Jared Powers, a non-public figure and a resident of California, and Winona Valdez, a professional model and a resident of California (collectively, "Plaintiffs"), seek damages (including punitive damages), declaratory and injunctive relief, attorney fees and costs for injuries

suffered due to copyright infringement, misappropriation of name and likeness, and defamatory statements made by Defendants on the website Cheaterville.com. As a direct result of the defamatory statements and copyright infringement, which over 710,000 people viewed and accessed, Plaintiff suffered severe emotional distress, loss of reputation, and economic damages. The statements are so egregious as to constitute libel per se, for which damages are presumed.

2.  Defendants Does 1-50 ("Doe Defendants") are individuals or corporations or both, whose names and identities are unknown, but who, on information and belief, are not residents of California. Doe Defendants wrote an article discussing Plaintiffs on the Cheaterville website. Doe Defendants conspired to produce a libelous article and upload Plaintiffs' copyrighted photographs to which Defendants affixed a trademark and then posted publicly for 710,000 people to see. Because their identities are not known, Plaintiffs sue them under these fictitious names and will, after discovery reveals their identities, amend this complaint to name them.

3.  Doe Defendants knew or had reason to know that their statements about Plaintiffs were false, and yet they made those statements anyway. They failed to carry their burden to determine if the statements about Plaintiffs were true or false, and violated their duty to Plaintiffs to conduct a reasonable investigation into whether the statements were true.

4.  Doe Defendants knew they did not own the copyrights to Plaintiff's photographs, and yet they misappropriated, reproduced, and broadcast Plaintiff's photographs anyway. Defendants do not comply with the Digital Millennium Copyright Act's notice-and-takedown procedures, and thus cannot take advantage of its safe harbor provisions.

*Powers v. Does 1-50*
**Complaint**

5. Defendants knew Plaintiff had not granted to them the right to use Plaintiff's name or likeness for commercial purposes, and yet Defendants used Plaintiff's name and likeness to drive traffic to the Cheaterville website, sell advertising, and sell products on the Cheaterville website.

6. Through counsel, Plaintiff sent the Cheaterville website a demand letter on or about September 2012 informing them that the posting was false, malicious, and should be removed from the website. Plaintiff sent this letter to Cheaterville because the identity of Doe Defendants is unknown; this letter was sent in a good faith attempt to mitigate damages and to comply with California's retraction statute (if such a statute were held to apply, which Plaintiff does not concede). Defendants refused to retract or remove their defamatory statements, either verbally or in writing, and instead demanded that Plaintiff pay a $199 ransom to another corporation with whom the Cheaterville website enjoys a special relationship.

7. Plaintiff asks this court to order Doe Defendants to retract in writing their defamatory statements, to enjoin Defendants from future defamation of Plaintiff, to enjoin Defendants from further copyright infringement and misappropriation of Plaintiff's right of publicity, and to award Plaintiff damages, attorney fees, and costs of suit.

## Jurisdiction and Venue

8. Jurisdiction over Plaintiffs' federal claims is proper under this court's original jurisdiction because this case involves substantial issues of federal law, including the U.S. Copyright Act and the Lanham Act. 28 U.S.C. §§ 1331 and 1343.

*Powers v. Does 1-50*
**Complaint**

9.   Jurisdiction is proper over Plaintiffs' state law claims under this court's supplemental jurisdiction because the state law claims arise out of the same nucleus of operative facts as the federal claims. 28 U.S.C. § 1367.

10. Jurisdiction is further proper under this court's diversity jurisdiction because the damages exceed $75,000 and Plaintiffs, residents of California, are diverse from each of the Defendants who, on information and belief, are not California residents. 28 U.S.C. §1332.

11. Venue is proper in this Court because the Defendants purposefully availed themselves of the privilege of doing business in California, and, by specifically publishing a post entitled "Jared Powers – Sacramento," they targeted their acts at a resident of Sacramento, a city located in the Eastern District of California. Because of the global nature of the Internet, the acts of which Plaintiff complains took place in Sacramento County within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## Parties

12. Plaintiffs Jared Powers and Winona Valdez ("Plaintiffs") are private individuals (not public figures) and at all relevant times residents of California.

13. On information and belief, Defendants Does 1-50 ("Defendants" or "Doe Defendants") are individuals or businesses or both. At all relevant times, on information and belief they were and are residents of the United States but do not reside in California. Doe Defendants conspired to operate the Cheaterville website and to violate Plaintiffs' right of publicity, copyright, and to defame Plaintiffs by creating and publishing a defamatory article about Plaintiffs. Because their identities are not known, Plaintiffs sue

*Powers v. Does 1-50*
**Complaint**

them under these fictitious names and will, after discovery reveals their

identities, amend this complaint to name them.


### Facts

14. Plaintiffs are private individuals, not public figures.

15. Plaintiff Jared Powers married his wife, Winona Valdez, in 2009.

16. Since marrying Plaintiff Valdez, Plaintiff Powers has been sexually intimate only with his wife.

17. Before discovering the defamation referenced in this lawsuit, Winona Valdez operated a Facebook profile.

18. The Facebook profile belonging to Winona contained photographs edited by Jared or Winona or both. Plaintiffs own the copyrights to those photographs.

19. Plaintiffs have never granted to any of the Defendants the right to use Plaintiffs' names, photographs, or likenesses for any purpose.

20. Plaintiffs has never granted to any of the Defendants the right to use any of Plaintiffs' copyrighted materials for any purpose.

21. In September 2012, Plaintiff Powers searched for his name on the Internet and discovered a website called Cheaterville.com that hosted an essay describing him as homosexual, alleging that he was a user of methamphetamine, alleging that he had solicited sex on a website, alleging that he engaged in sexual relations with a man, and alleged that he cheated on his wife, among other false and defamatory statements.

22. A true and correct copy of the offending essay is attached to this complaint as Exhibit A.

23. On information and belief, Defendants own and operate Cheaterville.com.

*Powers v. Does 1-50*
**Complaint**

24. Cheaterville.com allows users of the website to submit articles and essays discussing other individuals. One or more Cheaterville.com employees reads and reviews each submission. If the employee finds the submission sufficiently salacious, inflammatory, and offensive, the employee will publish the article. If the employee finds the submission unacceptable because it is insufficiently offensive, the employee will write a letter to the user, explaining how to improve the article.

25. Defendants solicit, encourage, and develop articles and essays about private individuals accusing those individuals of deviant sexual practices, marital infidelity, and illicit drug use. The Cheaterville.com website enables website visitors to search the website for the names of private individuals, limiting the scope of the searches to those individuals who have been libeled by the Defendants. The purpose and effect of the Cheaterville website is to disparage a private individual's reputation in order to drive traffic to the website, sell products and advertising on the website, and to profit off of the wrongfully obtained photographs of private individuals and defamatory articles and essays discussing those private individuals. *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1166 (9th Cir.2008) (en banc) (affirmed Fair Housing Council of San Fernando Valley v. Roommate.com, LLC, 666 F.3d 1216 (9th Cir. 2012).

26. Defendants' prompting of unlawful essays and articles – by employing staff who instruct Doe Defendants to submit ever more salacious and defamatory articles and essays – and then publishing those essays makes Cheaterville an information content provider.

27. Defendants, the users who submit articles and essays to Cheaterville Defendants, provide those essays in response to other Defendants'

solicitations and follow-up e-mails, which demand material of a nature more likely than not to be libelous and invasive of private individuals' privacy.

28. On information and belief, Doe Defendants provided the article at issue here in response to another Defendant's encouragement and guidance, which Doe Defendants cannot refuse to follow if they want to use Cheaterville's services.

29. Defendants operating the Cheaterville website allow only a limited set of acceptable responses to their questions, solicitations, and encouragement to be posted on the site.

30. After Doe Defendants posted the wrongful essay about Plaintiffs, Defendants operating the Cheaterville website allowed other Defendants to upload a photograph of Winona and Jared clothed in their swimsuits and swimming in a lake. Defendants operating the Cheaterville website labeled this photograph as "PROOF" of the falsehoods contained in the text of the essay. When they published the statement that there was "PROOF" for the essay about Jared and Winona, Defendants operating the Cheaterville website further developed the essay and affirmatively took responsibility for the content of the essay.

31. By requiring users to provide defamatory information as a condition of accessing its service, and by providing a limited set of acceptable responses, Defendants who operate the Cheaterville website have become much more than a passive transmitter of information provided by others; they have become the developers, at least in part, of that information.

32. Because they publish material developed in part by others <u>and</u> themselves develop in part the material they publish, Defendants who operate the Cheaterville website are a interactive computer service as well as an

information content provider under the federal Communications Decency Act.

33. Section 230 of the Communications Decency Act provides immunity to service providers only if the interactive computer service does not "creat[e] or develop[ ]" the information "in whole or in part." See 47 U.S.C. § 230(f)(3). Interactive computer services that develop the information in part are considered an information content provider subject to tort liability. All Defendants here developed, in part, the essays and posts discussing Plaintiffs, and Defendants are therefore not immune from liability under the CDA.

34. Defendants' claim that there is "PROOF" for the essay and website discussing Plaintiffs materially contributes to the illegality of that essay by asserting that the allegations are assertions of fact supported by evidence, thereby increasing the harm to Plaintiffs' reputations.

35. Defendants' email correspondence with users materially contributes to the illegality of their essays by encouraging and soliciting defamatory responses from users, thereby increasing the harm to Plaintiffs' reputations.

36. Defendants operating the Cheaterville website force users to express defamatory statements and statements likely to be defamatory, making defamation possible.

37. Defendants operating the Cheaterville website both elicits the illegal content and makes aggressive use of it in conducting its business.

38. The work of Defendants operating the Cheaterville website in developing the unlawful content, including unsubstantiated references to illegal drug use and adultery, is directly related to the alleged illegality of the site.

*Powers v. Does 1-50*
**Complaint**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

39. Defendants operating the Cheaterville website provide specific guidance to its users, including other Defendants, as to what each article should contain.

40. Defendants operating the Cheaterville website urge their users, including other Defendants, to input libelous statements, and in fact work with users to improve postings that are insufficiently salacious or defamatory.

41. Defendants operating the Cheaterville website are responsible, in whole or in part, for the development of this defamatory content, which comes in part from Defendants operating the Cheaterville website and in part from its users, including other Defendants.

42. Defendants operating the Cheaterville website review every submitted essay, and distinguish those "milder" essays that are unlikely to be defamatory from those essays that express clearly libelous statements. Defendants operating the Cheaterville website publish only those essays most likely to contain libelous statements.

43. To take advantage of average citizens – and reduce the likelihood of them getting sued by powerful interests – Defendants operating the Cheaterville website review every submitted essay, and typically refuse to publish essays that describe public figures, instead favoring libelous essays about private figures. Defendants operating the Cheaterville website will not, for example, post an essay about Brad Pitt accusing him of cheating on his spouse or girlfriend, but they will publish an identical essay about a private figure. That they publish only material about private figures shows that they know the material to be false, yet they publish it anyway because they are confident that they have libeled only the most vulnerable persons and those least likely to fight back.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

44. Because Defendants operating the Cheaterville website are an active participant in the development of the content for its site, its users do not always know whether the essays they develop with Cheaterville will ever be published online.

45. All Defendants acted intentionally and with malice in order to purposefully cause injury to Plaintiffs. Because they acted intentionally, punitive damages are appropriate and justified.

## No adequate remedy at law

46. Because the risk of a repeat offense is high, Plaintiffs have no adequate remedy at law and require injunctive relief to prevent a recurrence of the harm complained of.

## COUNT ONE

### Defamation per se

### (against all Defendants)

*Cal. Civ. Code §44, 45, 45a, 46*

47.    Plaintiff incorporates by reference the preceding paragraphs as if set forth fully herein.

48.    Plaintiffs are not public officials or public figures.

49.    Plaintiffs are private individuals.

50.  Under the Communications Decency Act, a website operator can be both a service provider and a content provider as to content that it creates itself, or is responsible, in whole or in part, for creating or developing. *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, *521 F.3d 1157, 1162 (9th Cir.2008) (en banc)*.

51. Defendants operating the Cheaterville website are responsible in part for creating and developing the essay about Plaintiffs because they solicit,

*Powers v. Does 1-50*
**Complaint**

Page 10

1

2

encourage, and provide feedback to users, including other Defendants, before posting essays online.

3

4

5

6

7

8

9

10

11

12

13

52. That Defendants who use the Cheaterville website are information content providers does not preclude Defendants operating the Cheaterville website from also being information content providers by helping develop at least in part the information posted in the form of essays about users. See *Fraley v. Facebook, Inc.*, 830 F.Supp.2d 785, 802 (N.D. Cal. 2011) (citing *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1165 (9th Cir.2008) (en banc). 1165 (emphasis in original). As the Ninth Circuit has clearly stated, "the party responsible for putting information online may be subject to liability, even if the information originated with a user." *Id.* (citing *Batzel v. Smith*, 333 F.3d 1018, 1033 (9th Cir.2003)).

14

15

16

17

53. Defendants made false and defamatory statements about Plaintiffs, including false statements alleging that Plaintiff Powers had engaged in illegal use of methamphetamine – a felony – and had cheated on his wife, Plaintiff Winona Valdez.

18

19

20

54. Defendants' false and defamatory statements were made to persons other than plaintiff because they were posted publicly on the internet and viewed by over 710,000 people.

21

22

55. Defendants knew or had reason to know that these statements were false when they made them, but they made them anyway.

23

24

56. Defendants did not undertake any investigation to determine whether the statements were true or false.

25

26

57. Because of Defendant's false and defamatory statements about Plaintiffs, Plaintiffs suffered harm to reputation and severe emotional distress.

27

28

*Powers v. Does 1-50*
**Complaint**

Because Defendant's statements were so outrageous, they constitute libel per se, for which damages are presumed.

## COUNT TWO
### Libel Per Se
### (against all Defendants)
### Cal. Civ. Code §46

58.    Plaintiffs incorporate by reference the preceding paragraphs as if set forth fully herein.

59.    Plaintiffs are not public officials or a public figures.

60.    Plaintiffs are private individuals.

61. Defendants made false and defamatory statements about plaintiffs.

62. The allegations that Plaintiff had engaged in felonious activity and adultery is defamatory on its face, and damages are presumed. Cal. Civ. Code § 45a; *Yow v. National Enquirer, Inc.*, 550 F.Supp.2d 1179, 1183 (E.D. Cal. 2008).

27.    Defendant's false and defamatory statements were made to persons other than plaintiff.

30.    Defendants knew or had reason to know that the statements were false when they made them, but they made them anyway.

29.    Defendant did not undertake any investigation to determine whether the statements were true or false.

30.     Because of Defendant's false and defamatory statements about Plaintiff, Plaintiff suffered actual damages, including emotional distress, damage to reputation, loss of income and prospective employment.

*Powers v. Does 1-50*
**Complaint**

## COUNT THREE

### Libel

### (against all Defendants)

### Cal. Civ. Code §45

63.    Plaintiff incorporates by reference the preceding paragraphs as if set forth fully herein.

64. On information and belief, Defendants' false and defamatory statements were made in writing, including but not limited to the use of e-mail and the Cheaterville website.

65. Because of Defendant's false and defamatory statements about Plaintiff, Plaintiff suffered actual damages, including emotional distress, damage to reputation, loss of income and prospective employment.

## COUNT FOUR

### (against all Defendants)

### Libel Per Se

### Cal. Civ. Code §45

66.    Plaintiff incorporates by reference the preceding paragraphs as if set forth fully herein.

28.    Defendant knew or had reason to know that these statements were false when she made them, but she made them anyway.

29.    Defendant did not undertake any investigation to determine whether the statements were true or false.

30.     Because of Defendant's intentional false and defamatory statements about Plaintiff, Plaintiff suffered actual damages, including loss of income and prospective employment, and damages to reputation justifying actual and punitive damages.

# COUNT FIVE

## Lanham Act

### (against all Defendants)

### 15 U.S.C. § 1125(a)

67.    Plaintiff incorporates by reference the preceding paragraphs as if set forth fully herein.

68.  The Lanham Act provides that "[a]ny living person who, on or in connection with any goods or services, ... uses in commerce ... false or misleading representation of fact, which is likely to cause confusion ... or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446 (S.D.N.Y. 2008).

69.  Because Winona Valdez is a professional model whose image has been used by businesses to promote and advertise their products, Defendants' unauthorized use of photographs of Winona Valdez to attract visitors to the Cheaterville website caused visitors to the website to experience the misleading (and false) impression that Valdez endorsed or sponsored Cheaterville.

70. Because of this misrepresentation, Plaintiffs suffered actual damages, including loss of income and prospective employment.

## COUNT SIX

### (against all Defendants)
### Violation and misappropriation of common law right of publicity

71. Plaintiff incorporates by reference the preceding paragraphs as if set forth fully herein.

72. When a person's identity, name, or likeness is deliberately invoked or imitated in order to sell a product, the sellers have appropriated what is not theirs and have committed a tort in California. *Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988).

73. Doe Defendants deliberately imitated and appropriated Plaintiffs' names, likenesses, and identities to sell products, including advertising on the Cheaterville website.

74. Defendants' use of Plaintiffs' names, likenesses, and identities violated Plaintiffs' right of publicity. *White v. Samsung*, 971 F.2d 1395 (9th Cir. 1992), cert. denied, 113 S.Ct. 2443 (1993).

75. Because of Defendants' misappropriation of their right of publicity, Plaintiffs have suffered damage to their reputation, harm to future business prospects, and loss of future income and employment.

## COUNT SEVEN

### (against all Defendants)
### Violation and misappropriation of California statutory right of publicity
### Cal. Civ. Code §3344(a)

76. Plaintiff incorporates by reference the preceding paragraphs as if set forth fully herein.

77. Defendants' essay about Plaintiffs was not part of a news, public affairs, sports broadcast or account, or a political campaign.

78. The details contained in Defendants' essay about Plaintiffs are not matters of public interest and "public affairs."

*Powers v. Does 1-50*
**Complaint**

79. Defendants deliberately imitated and appropriated Plaintiffs' names, likenesses, and identities to sell products, including advertising on the Cheaterville website.

80. Defendants' use of Plaintiffs' names, likenesses, and identities violated Plaintiffs' right of publicity. *White v. Samsung*, 971 F.2d 1395 (9th Cir. 1992), cert. denied, 113 S.Ct. 2443 (1993).

81. Because of Defendants' misappropriation of their right of publicity, Plaintiffs are entitled to $750 each in statutory minimum damages for each time that Plaintiffs' photographs were displayed to a visitor to the Cheaterville website.

## COUNT EIGHT

### (against all Defendants)
### Copyright infringement,17 U.S.C. §501, *et. seq.*

82. Plaintiffs incorporate by reference the preceding paragraphs as if set forth fully herein.

83. Plaintiffs own the copyright to each of their photographs that Defendants published to the Cheaterville website.

84. Defendants are not employees or agents of a nonprofit educational institution, library, or archives acting within the scope of their employment while publishing or uploading Plaintiffs' photographs to the Cheaterville website.

85. Defendants are not and were not a public broadcasting entity performing a published nondramatic literary work or by reproducing a transmission program embodying a performance of such a work while publishing or uploading Plaintiffs' photographs to the Cheaterville website.

86. Defendants willfully infringed Plaintiffs' copyrights.

*Powers v. Does 1-50*
**Complaint**

87. Defendants did not believe and had no reason to believe that their infringement was justified by Section 107 of the Copyright Act or any other law.

88. Plaintiffs' elect to recover the maximum allowable statutory damages for copyright infringement under Section 504(c) of the U.S. Copyright Act.

## COUNT NINE

### (against all Defendants)
### Public Disclosure of Private Facts

89. Plaintiffs incorporate by reference the preceding paragraphs as if set forth fully herein.

90. Plaintiffs plead this Count in the alternative to the other counts.

91. In California, the elements of a publications of private facts claim are: (1) public disclosure; (2) of a private fact; (3) which would be offensive and objectionable to the reasonable person; and (4) which is not of legitimate public concern, and that is published "with reckless disregard for the fact that reasonable men would find the invasion highly offensive." *Briscoe v. Reader's Digest Ass'n*, 4 Cal. 3d 529 (1971), overruled on other grounds by *Gates v. Discovery Communications, Inc.*, 101 P.3d 552 (Cal. 2004).

92. Defendants published defamatory statements on the Cheaterville website, which is open to the public because it is a publicly accessible site on the worldwide web.

93. Allegations concerning Plaintiff's alleged drug use and alleged marital infidelity (which Plaintiff specifically denies), even if true, would constitute "private facts."

94. Allegations that Plaintiff committed drug crimes and engaged in marital infidelity are offensive and objectionable to a reasonable person.

*Powers v. Does 1-50*
**Complaint**

95. These allegations are not of a legitimate public concern because Plaintiffs are not public figures.

96. Defendants published these allegations with reckless disregard for the fact that reasonable people would find this invasion of privacy highly offensive. In fact, Defendants published these allegations specifically because Defendants knew that reasonable people would find this invasion highly offensive.

97. Because of Defendant's intentional false and defamatory statements about Plaintiff, Plaintiff suffered actual damages, including loss of income and prospective employment, and damages to reputation justifying actual and punitive damages.

## Jury Trial Demanded

98. Plaintiffs demand a jury trial.

*Powers v. Does 1-50*
**Complaint**

**Therefore, Plaintiffs pray:**

1. For an order requiring Defendants, and each of them, to immediately retract, in writing and under penalty of perjury, the defamatory statements.
2. For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendants, and each of them, and their agents, servants, and employees, and all persons acting under, in concert with, or for them, to cease defaming plaintiff during the pendency of this action and at all times later.
3. For monetary damages, including punitive damages, according to proof at trial, but in an amount not less than $150,000.
4. For costs and reasonable attorney's fees.
5. For such other and further relief as the court deems just and proper.

Dated: August 15, 2013

/s/Daniel Watts
DANIEL WATTS SBN 277861
Law Office of Edward Misleh

*Powers v. Does 1-50*
**Complaint**